UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| RODERICK D. MCGEE, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:12-CV-260 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| OFFICER WILLIAMS MCMILLAN,[1] ) | |
| OFFICER GARY A. WILLIAMS, ) | |
| OFFICER JAMES AVERY, and ) | |
| CHATTANOOGA POLICE DEPARTMENT, ) | |
| ) | |
| Defendants. ) | |

## AMENDED MEMORANDUM

Before the Court are two motions for judgment on the pleadings. The first motion is filed by Defendants Chattanooga Police Department (also referred to herein as the "City of Chattanooga"),[2] Officer William McMillan, and Officer Gary A. Williams (Court File No. 22). The second motion is filed by Defendant Officer James Avery (Court File No. 32). *Pro se* Plaintiff Roderick D. McGee, Sr. ("Plaintiff") filed two documents as well as supplemental materials that will be construed as responses to Defendants' motions (Court File Nos. 28, 30, 30-1). For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motions (Court File Nos. 22, 32). The only claims that will remain against Defendants William McMillan and James Avery are Plaintiff's 42 U.S.C. § 1983 claims. All claims against Defendants Gary A. Williams and the

---

[1] According to the filings of Defendants and some of Plaintiff's filings, Officer McMillian's first name is "William" not "Williams." All further references to Officer McMillan will use the name "William."

[2] Plaintiff has filed his motion against the Chattanooga Police Department. However, the motion is more properly construed as a motion against the City of Chattanooga since the Chattanooga Police Department is a department within the City of Chattanooga.

Chattanooga Police Department will be dismissed.[3]

I.  **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The facts below come from Plaintiff's original complaint (Court File No. 5) and amended complaint (Court File No. 7), and are construed in the light most favorable to Plaintiff. Plaintiff makes several allegations against Officers Williams and McMillan that pertain to his prior arrests. The facts as alleged are below:

> June 9, 2011 I was arrested trying to get housing in East Lake Court I had a freind filling out an application for me because I was abandon by my wife when Gary A. Williams arrested me for Criminal Trespassing on 2500 of E. 25th St so I reported him to Internal Affair After I did that Gary A William again arrested me August 23rd 2011 for Aggravated Trespassing for going to East Lake CHA to be off No Trepass List I went to jail, beat by jailers went to hospital March 1st Gary A Williams arrested me again for trespassing at store on 4th Ave. for public drunk but I was not drunk waiting on food. William McMillan stop me on 4th Ave. Search me and told me squash the beef with Gary A. Williams After that May 8th William McMillan stop me on 26th St with an unopen quart of Miller 32o and said I had two warrants he open beer pour out the beer took me to jail and charge me with public intoxication and open container Gary A. Williams was at the jail talking crazy to me at that time

(Court File No. 5 at 2). The remaining allegations raised in Plaintiff's amended complaint address matters concerning Officer Avery, Officer McMillan, and other unknown officers on September 12, 2012. Specifically, Plaintiff alleges:

> CHA Officer Avery Bade # 1525 violated my 4th amendment rights by using excessive force when he shot me with a tazer while handcuffed for no reason on 9-12-12. He also had along with Chatt. police officer William McMillin and other officers hit me in my testical untill I passed out. Then they put excessive amounts of amonia in my nose.

---

[3] Plaintiff has also filed a motion for a hearing (Court File No. 31). Because the Court has a scheduling conference set in this case pursuant to Rule 16 of the Federal Rules of Civil Procedure, Plaintiff's motion for a hearing is **DENIED AS MOOT** (Court File No. 31).

2

(Court File No. 7 at 1).

On August 1, 2012, Plaintiff filed a complaint against Defendants (Court File No. 2). Because the complaint was handwritten and difficult to decipher, the magistrate judge ordered Plaintiff to rewrite and file a new complaint (Court File No. 5). For purposes of this memorandum, the resubmitted document will be referred to as the original complaint. Plaintiff later filed a motion to supplement his complaint, which was also granted by the magistrate judge. This "supplement" will be treated as Plaintiff's amended complaint (Court File No. 7).[4]

In the original complaint, Plaintiff asserts three claims against Defendants: (1) "abuse of power" by the officers; (2) "violation ordinace Federal Civil Right Act"; and (3) violation of the Tennessee Human Rights Act (Court File No. 5). In the amended complaint, he asserts what appears to be a 42 U.S.C. § 1983 claim against Defendants (Court File No. 7). Plaintiff seeks punitive and compensatory damages against Defendants.

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is considered using the same standard of review as a Rule 12(b)(6) motion. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). A Rule 12(b)(6) motion should be granted when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and

---

[4] Ordinarily, the amended complaint would supersede any previous filings. However, because the Court understands that Plaintiff merely intended to add an additional allegation when he filed the amended complaint, the Court will consider both filings as part of his pleadings.

3

assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman*, 484 F.3d at 859. The same deference does not extend to bare assertions of legal conclusions, however, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. Although a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), this statement must nevertheless contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When considering a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Fritz*, 592 F.3d at 722 (citing *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *JP Morgan Chase Bank*, 510 F.3d at 581-82.

It is well established that courts are required to liberally construe *pro se* complaints to allow for the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The requirement of liberal construction, however, does not translate to ignoring a clear failure in the pleadings to allege facts that set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs. for City*

*of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990). *Pro se* plaintiffs are still required to comply with substantive law and the minimum requirements for pleading a civil complaint under Fed. R. Civ. P. 8(a). *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004).

### III. DISCUSSION

Defendants seek dismissal of Plaintiff's claims for relatively similar reasons. First, Defendants argue Plaintiff fails as a matter of law to state a violation of the "Federal Civil Right Act," assuming he is asserting a claim under Title VII of the Civil Rights Act of 1964. For similar reasons, Defendants argue Plaintiff's Tennessee Human Rights Act claim against Defendants must fail. Second, Defendants argue Plaintiff's 42 U.S.C. § 1983 claim must be dismissed for failure to state a claim upon which relief can be granted. Finally, Defendants argue Plaintiff's "abuse of power" claim must be dismissed because it is not a legally cognizable claim standing alone under federal law, nor has Plaintiff alleged facts such that it could be considered a cognizable claim under any federal or state law. The Court will discuss each claim as it pertains to each Defendant in turn.

#### A. Civil Rights Act and Tennessee Human Rights Act

Defendants seek to dismiss Plaintiff's federal Civil Rights Act and Tennessee Human Rights Act ("THRA") claims. As a preliminary matter, Plaintiff fails to explain how either statute is relevant to his allegations. Defendants speculate Plaintiff's claims are brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*., and the THRA, Tenn. Code Ann. §§ 4-21-101 *et seq.* The problem, however, is that Plaintiff makes no mention of employment discrimination in his complaint as required under Title VII or the related THRA provision. *See* 42 U.S.C. § 2000e-2(a) ("[I]t shall be an unlawful employment practice for an employer to . . .

5

discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."); *see also* Tenn. Code Ann. §§ 4-21-401–408. Moreover, after considering the most common claims brought with respect to the Civil Rights Act of 1964 or the THRA, the Court can find no other grounds under these statutes for Plaintiff's claims because Plaintiff has not alleged he was discriminated against on the basis of, *inter alia*, race, ethnicity, national origin, religion, or sex.[5] Accordingly, the Court must dismiss Plaintiff's "Federal Civil Right Act" and "THRA" claims against Defendants.

### B. 42 U.S.C. § 1983 Claims

To the extent Plaintiff has also brought 42 U.S.C. § 1983 claims against Defendants, Defendants seek dismissal of those claims as well. Although Plaintiff makes no mention of 42 U.S.C. § 1983 in his pleadings, the Court will construe Plaintiff's pleadings liberally to include such claims because he alleges certain Defendants used excessive force toward him in violation of his Fourth Amendment rights. To state a general claim under § 1983, a plaintiff must set forth "facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

---

[5] In Plaintiff's demand for relief, he does mention in passing that "I am handicap on disability[.] I don't need to go to jail everytime I walk out my door in East Lake" (Court File No. 5 at 3). He also mentions at an earlier point that he was "arrested trying to get housing in East Lake Court" (*id.* at 2). Although the THRA contains a provision that prohibits discriminatory housing practices on the basis of handicap, *see* Tenn. Code Ann. § 4-21-601, nowhere in Plaintiff's complaint does he allege he was denied housing on the basis of his alleged disability. Similarly, it is not apparent that any equivalent federal statute pertaining to disability would be applicable given that Plaintiff fails to allege in his complaint that he was discriminated against on the basis of disability or any other actionable basis.

When a party brings a suit against an officer in his official capacity, it is construed as a suit against the governmental entity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Suits against a municipality also involve a two-prong inquiry. *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004). The court must determine: (1) whether the plaintiff has been deprived of a constitutional right; and (2) whether the municipality is responsible for the violation. *Id.*

A municipality cannot be liable under a *respondeat superior* theory for § 1983 violations. *Id.* Rather, municipalities are liable when they "have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). Additionally, even absent a policy "officially adopted" by a municipality's officers, a § 1983 plaintiff "may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A plaintiff bears the burden of showing "that the unconstitutional policy or custom existed, that the policy or custom was connected to the [municipality], and that the policy or custom caused [the] constitutional violation." *Napier v. Madison Cnty.*, 238 F.3d 739, 743 (6th Cir. 2001).

### i. Officer Avery in his Individual Capacity

Because it is undisputed that Officer Avery was a person acting under color of state law, the Court will proceed to consider whether Officer Avery deprived Plaintiff of a constitutional right. Excessive force claims are properly analyzed under an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Whether or not a use of force is reasonable requires balancing

7

of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). Determining reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Garner*, 471 U.S. at 8-9). A plaintiff bears the burden of proving the force used was unjustified in order to state a constitutional deprivation. *Miller v. Taylor*, 877 F.2d 469, 472 (6th Cir. 1989). The reasonableness of an officer's actions is calculated with "allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain and rapidly evolving--about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. The "20/20 vision of hindsight" is not the arbiter of reasonableness. *Id*. at 396.

Officer Avery argues Plaintiff has failed to establish a claim of excessive force under the "objective reasonableness" standard. Officer Avery contends he had probable cause to arrest Plaintiff because he knew Plaintiff was on the public housing trespass list and he observed Plaintiff commit the offense of criminal trespassing. He also notes Plaintiff acknowledges in his complaint that he was on the no trespass list and, as a matter of public record, Plaintiff pleaded guilty to the charges of criminal trespass and resisting arrest stemming from this incident (though Officer Avery further notes Plaintiff has appealed those guilty pleas). Moreover, Officer Avery claims Plaintiff has been charged with criminal trespassing on the property of the Chattanooga Housing Authority at least six other times. Officer Avery contends "[v]iewed objectively, the Plaintiff's right to privacy in a place where he has no right to be, i.e. where he is a criminal trespasser, is indisputably

8

outweighed by the CHA's interest in protecting the safety and security of the law-abiding residents of the East Lake Court community" (Court File No. 32 at 4).

While the Court recognizes the interest of protecting the safety and security of the residents in the public housing community may have outweighed Plaintiff's right to privacy, especially given that Plaintiff was trespassing, the Court observes that a factual dispute exists regarding whether the force used against Plaintiff was reasonable. According to Plaintiff, at the time of his arrest, Officer Avery shot him with a taser while he was handcuffed for no reason. He also alleges Officer Avery along with several other officers hit him in the testicles until he "passed out." Moreover, he alleges the officers "put excessive amounts of am[m]onia in [his] nose."

Viewing the facts in the light most favorable to Plaintiff and based on the limited information presently before the Court, the facts do not support a conclusion that the officer's actions were objectively reasonable. Even assuming Officer Avery had probable cause to arrest Plaintiff, his actions are greatly disproportionate to what the circumstances as alleged would necessitate, especially taking into account the fact that the crime at issue was criminal trespassing; Plaintiff alleges he was "disabled"; Plaintiff contends he was already handcuffed when the taser was used; and Plaintiff avers the officers further beat him until he passed out and put excessive amounts of ammonia in his nose. After considering the totality of the circumstances,[6] the Court cannot conclude Officer Avery's actions were objectively reasonable. Thus, Officer Avery has failed to establish Plaintiff's § 1983 claim should be dismissed for failure to state a claim upon which relief can be

---

[6] The Court observes that Officer Avery claims Plaintiff resisted arrest. However, without any further details regarding the extent of Plaintiff's resistance at this stage, the Court still concludes Officer Avery's actions were not justified. As the case proceeds, additional evidence may be offered that may establish the level of force used was necessary. However, that information is not presently before the Court.

granted.

Alternatively, Officer Avery asserts the affirmative defense of qualified immunity. The qualified immunity doctrine shields government officials performing discretionary actions from civil damages liability as long as their actions reasonably could have been thought consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Even if a government official deprives a plaintiff of a federal right, "qualified immunity will apply if an objective reasonable officer would not have understood, by referencing clearly established law, that his conduct was unlawful." *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The plaintiff bears the burden of showing a defendant is not entitled to qualified immunity. *See Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

To determine if qualified immunity applies, courts employ a two-part test. First, courts determine whether the facts, taken in a light most favorable to the party alleging injury, show an officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, if a Constitutional right was violated, courts must determine "whether the violation involved a clearly established constitutional right of which a reasonable person would have known." *Peete v. Metro. Gov't of Nashville and Davidson Cnty.*, 486 F.3d 217, 219 (6th Cir. 2007) (citation omitted); *see also Saucier*, 533 U.S. at 201. This second inquiry looks closely at the particular context of the case rather than asking whether a right was clearly established "as a broad general proposition." *Saucier*, 533 U.S. at 201. If a plaintiff fails to establish either of these prongs, he has failed to carry his burden and judgment is appropriate for the defendant. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). Since the failure of either prong is dispositive in favor of a defendant, the

Court may address either prong first. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

Because qualified immunity shields reasonable conduct, even when it is mistaken, this Court has at times added a third line of inquiry to the traditional two-part test: "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Peete*, 486 F.3d at 219; *cf. Everson v. Leis*, 556 F.3d 484, 494 n.4 (6th Cir. 2009) (stating regardless of whether the two-prong or the three-prong test is applied, "the essential factors considered are [] the same").

Here, again viewing the facts in the light most favorable to Plaintiff who is proceeding *pro se*, the Court concludes Plaintiff adequately alleged facts to overcome Officer Avery's defense of qualified immunity at this stage. The only bases for Officer Avery's assertion of qualified immunity are that Plaintiff has not specifically identified a clearly established right and that, again, Officer Avery's actions were objectively reasonable. The Court has already determined Plaintiff has plausibly alleged Officer Avery violated Plaintiff's Fourth Amendment rights when he used excessive force as described in the pleadings. However, the Court now further concludes the use of excessive force in this instance violated a "clearly established constitutional right" that a reasonable officer would have known he was violating. Officers are certainly entitled to use force in instances when an individual is resisting arrest, and Officer Avery contends that is the case here. However, there are no facts available to the Court at this stage upon which the Court can assess the nature and extent of Plaintiff's resistance. Although facts revealed at a later stage could potentially reveal that the use of force here was justified (or that the events did not occur as alleged), the pleadings taken as true do not support this conclusion. According to the pleadings, Plaintiff alleges he was tased, beaten until he passed out, and given excessive amounts of ammonia, all of which he claims

occurred after he was already handcuffed. *See Roberts v. Manigold*, 240 F. App'x 675, 677 (6th Cir. 2007) ("[T]he gratuitous use of force on a suspect who has already been subdued and placed in handcuffs is unconstitutional." (quoting *Bultema v. Benzie Cnty.*, 146 Fed. App'x 28, 35 (6th Cir.2005))).

Taking into account the totality of the circumstances as they have been alleged, Officer Avery's actions cannot be viewed as reasonable and were in violation of a clearly established right. Accordingly, the Court concludes Officer Avery's defense of qualified immunity must be denied, and Plaintiff's 42 U.S.C. § 1983 claim against Officer Avery will be allowed to proceed.

### ii. Officer McMillan in his Individual Capacity

For similar reasons, the Court concludes it will not dismiss Plaintiff's 42 U.S.C. § 1983 claim against Officer McMillan. Officer McMillan is also a state actor. Moreover, Plaintiff has adequately alleged facts in the complaint establishing Officer McMillan used excessive force when arresting Plaintiff. Plaintiff alleges Officer McMillan was among the officers who subsequently hit him repeatedly in the testicles until he passed out, despite the fact he was handcuffed and had already been tased by Officer Avery. He also alleges Officer McMillan was among the officers who put excessive amounts of ammonia in his nose. Again, as the case progresses, additional facts may be revealed that may make Officer McMillan's actions justifiable or that may reveal the events occurred differently from what was alleged. However, at this stage, viewing the facts in the light most favorable to Plaintiff, the Court concludes Plaintiff has sufficiently pleaded both prongs of his § 1983 claim to survive Officer McMillan's motion.[7]

---

[7] Officer McMillan did not assert the affirmative defense of qualified immunity in his motion for judgment on the pleadings. Accordingly, the Court will not discuss whether qualified immunity applies with respect to Officer McMillan.

Case 1:12-cv-00260-CLC-WBC   Document 40   Filed 07/29/13   Page 12 of 15   PageID #: 230

### iii. Officer Williams in his Individual Capacity

Next, the Court will consider whether Plaintiff has plausibly pleaded a 42 U.S.C. § 1983 claim with respect to Officer Williams. As with the other officers, Officer Williams is considered a state actor. However, with regard to the second prong of the test for establishing a § 1983 claim, Plaintiff has failed to adequately plead this prong. Plaintiff expressly alleges Officer Avery and Officer McMillan used excessive force on September 12, 2012, but does not expressly allege Officer Williams used excessive force. Instead he merely mentions that "other officers" hit him in the testicles and/or put excessive amounts of ammonia in his nose. While it is certainly possible that Officer McMillan was present at the time of the arrest and may have participated in the alleged conduct, Plaintiff has not alleged Officer Williams was involved in the incident on September 12, 2012, or even that Officer Williams was present. Accordingly, in the absence of any allegations indicating Officer Williams was present and used excessive force against Plaintiff, the Court must dismiss this claim against Officer Williams.

### iv. Chattanooga Police Department and Officers in their Official Capacities

The Court must also consider Plaintiff's claims as they pertain to the Chattanooga Police Department and Officers Avery, McMillan, and Williams in their official capacities. A suit against an official in his official capacity is construed as a suit against the governmental entity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 68 (1989). Therefore, the claims against Officers Avery, McMillan, and Williams in their official capacities are construed as claims against the Chattanooga Police Department, or more properly, the City of Chattanooga.

Plaintiff has failed to allege the City of Chattanooga should be held responsible for the officers' conduct. In particular, Plaintiff has not alleged the City of Chattanooga had a policy or

13

custom encouraging or endorsing the officers' alleged unconstitutional conduct nor that any such policy or custom was the cause of the alleged violations. *See Napier v. Madison Cnty.*, 238 F.3d 739, 743 (6th Cir. 2001). In the absence of any such allegations demonstrating that the City of Chattanooga is responsible for the alleged constitutional violations, the Court concludes Plaintiff's 42 U.S.C. § 1983 claims against the City of Chattanooga and the officers in their official capacities must be dismissed.

### C. Abuse of Power

Finally, Plaintiff alleges the Chattanooga Police Department and its officers engaged in an abuse of power. Because the Court has already addressed Plaintiff's allegations regarding the use of excessive force, the Court assumes Plaintiff is referring to his prior encounters with the law between June 9, 2011, and May 8, 2012. In particular, in the complaint, Plaintiff describes how he was arrested for criminal trespassing by Officer Williams on June 9, 2011, and August 23, 2011; and arrested for public intoxication on May 8, 2012, by Officer McMillan.[8]

As a preliminary matter, there is not a separate legally cognizable claim of "abuse of power" under federal law. Second, to the extent Plaintiff's claims could be construed as alleging due process violations against Officers Williams and McMillan, the Court agrees with Defendants that Plaintiff has failed to allege specific facts upon which the Court could conclude any such constitutional rights were violated.[9] Finally, to the extent Plaintiff is asserting state law claims of "abuse of process"

---

[8] Plaintiff also mentions that he was "beat by jailers" following one of the arrests. However, nowhere does he allege that any of the remaining parties in the case were involved in this alleged conduct. The Court also notes that Plaintiff makes no allegation in the pleadings in this case that the beating by jailers was encouraged or endorsed in a policy or regulation of the City of Chattanooga.

[9] Most notably, Plaintiff essentially concedes in his complaint facts upon which the Court could conclude the officers had probable cause for the arrests. For instance, Plaintiff admits he was

14

against Defendants, those claims must also fail. To establish an abuse of process claim under Tennessee law, the plaintiff must establish: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge." *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 400 (Tenn. 2002). Here, at a minimum, Plaintiff has not alleged that Officers Williams or McMillan had an "ulterior motive."[10] Accordingly, the Court concludes Plaintiff's "abuse of power" claims must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motions (Court File Nos. 22, 32). The only claims that will remain against Defendants William McMillan and James Avery are Plaintiff's 42 U.S.C. § 1983 claims. All claims against Defendants Gary A. Williams and the Chattanooga Police Department will be dismissed.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

---

on the "No Trespass" list at the time he was arrested by Officer Williams on August 23, 2011. Moreover, Plaintiff acknowledges that he was told he had two outstanding warrants at the time he was arrested by Officer McMillan on May 8, 2012. Finally, because Plaintiff's claim with respect to the June 9, 2011 arrest is outside of the applicable statute of limitations, the Court will not consider any claim stemming from that allegation. *See* Tenn. Code. Ann. § 28-3-104; *Moore v. Potter*, 47 F. App'x 318, 320 (6th Cir. 2002) (noting federal courts apply the state personal injury statute of limitations of one year in civil rights actions, including § 1983).

[10] As noted by Defendants, the City of Chattanooga is also immune from liability on this claim pursuant to Tenn. Code Ann. § 29-20-205(2).